**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2466. GRANGER v. THE STATE.

RAY, Judge.

Having been convicted of statutory rape[1] and child molestation[2] for having sexual contact with his then fourteen-year-old niece, Appellant Carey Lee Granger ("Granger") appeals and seeks a new trial, contending that his lawyer was ineffective, and that his case was prejudiced, by his lawyer's failure to object to unfair bolstering of the victim's testimony at trial and to improper argument put forth by the prosecutor during the closing arguments, and by the admission into evidence of statements made by Granger while on the phone in the police investigation room, in which he used an offensive, derogatory term. As we believe

---

[1] OCGA § 16-6-3.

[2] OCGA § 16-6-4(a).

that Granger received effective legal representation and that the alleged errors, if any, were harmless, we affirm.

Construed in the light most favorable to the verdict of the jury,[3] the evidence shows that in July 2009 that T.G., the fourteen-year-old female victim, was visiting family in Georgia and staying at her aunt's home. Granger, who was then twenty-five and is T.G.'s uncle,[4] came to visit her. Granger ended up staying over for the night, and he and T.G. fell asleep side by side on a couch while watching television.

What happened next was disputed at trial. T.G. claims that during the evening she awoke to Granger touching her. She contends that she told him to stop, but that he refused and threatened to hurt her if she screamed. Granger then pulled down her pants and "gently placed" his lips on her private area; pulled out his penis and put it in her private area; forced his penis inside her vagina until she "jumped back"; and pulled out his penis and demanded that she "stroke" it, at which time he ejaculated on her stomach. T.G. claimed that she did as she was

---

[3] *Al-Amin v. State*, 278 Ga. 74, 74 (1) (597 SE2d 332) (2004).

[4] Granger is the half brother of T.G.'s mother. This fact served as the basis for the trial court's grant of a directed verdict on the incest charge.

told, due to his threats and out of fear that Granger would harm her if she didn't. Afterwards, T.G. claimed that Granger gave her a blue towel and told her to clean up the semen, which she did. Granger purportedly fell asleep thereafter.

Granger admits to having sexual contact with his niece, but claims that it was all initiated by T.G. He testified that T.G. asked him several times if he had a condom, as she wanted a condom to use with him and wanted to "get some." She asked him to kiss her, which he refused, and she then started touching his chest and stomach. He claims that T.G. then unbuckled his pants, began touching his penis, and masturbated him. Granger claimed T.G. asked him to ejaculate on her stomach, which he did. Granger denied, however, performing any oral sex on T.G. or having sexual intercourse with her.

Upon learning the next morning of T.G.'s allegations that she had been raped by Granger, her aunt called the police, and T.G. was then taken to the hospital where a sexual assault examination was performed. A nurse testified that the evaluation revealed that T.G.'s vagina was torn and bleeding, and she also testified as to her interpretation of T.G.'s demeanor, stating on direct examination that the victim was "very shocked, very withdrawn by what had occurred." When asked to explain this, the nurse testified that "she was not kidding with us."

3

Granger was taken to the police headquarters for an interview. Although he invoked his right to counsel, thus stopping the questioning, he was recorded in the interview room some time later having a phone conversation on his cell phone with an unidentified person, wherein Granger said, "for like five minutes nigger . . . and then I stopped." Both the nurse's statements about T.G.'s demeanor during the hospital examination and Granger's statement during his phone conversation were admitted at trial, without objection.

Granger faced trial on six charges: rape, aggravated child molestation, incest, sodomy, statutory rape, and child molestation. The trial court directed a verdict on the incest charge, and the jury acquitted Granger on the rape, aggravated child molestation and sodomy charges. He was convicted of only statutory rape and child molestation , for which he was sentenced to a total of 40 years, 15 to serve and 25 years on probation. It is from this conviction that Granger appeals.

1. Granger claims that his trial counsel was ineffective for failing to object to improper bolstering of T.G. through the nurse's testimony and for failing to move for a mistrial. We disagree.

In explaining T.G.'s demeanor upon arriving at the hospital, the nurse testified that she "could tell that [T.G.] was not kidding with us." Granger correctly points out that

[t]he credibility of a witness, including a victim witness, is a matter for the jury's determination under proper instruction from the court. It is well established that in no circumstance may a witness' credibility be bolstered by the opinion of another as to whether the witness is telling the truth.[5]

In cases involving sexual offenses, where the victim's and the defendant's credibility are at issue, which is often the case, a defendant might have his conviction reversed if there has been improper bolstering.[6]

Yet, to prevail on an ineffective assistance of counsel claim, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*.[7] Thus, Granger must show that his counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood

---

[5] (Citations and punctuation omitted.) *Gatson v. State*, 317 Ga. App. 645, 647-648 (1) (731 SE2d 79) (2012).

[6] See *Walker v. State*, 296 Ga. App. 531, 535 (1) (b) (675 SE2d 270) (2009); *Orr v. State*, 262 Ga. App. 125, 128 (2) (584 SE2d 720) (2003); *Mann v. State*, 252 Ga. App. 70, 72-73 (1) (555 SE2d 527) (2001).

[7] 466 U.S. 668 (104 SC 2052, 80 LEd 2d 674) (1984).

that, but for the counsel's errors, the outcome of trial would have been different.[8]

If an appellant fails to meet either prong of this test, the reviewing court need not

examine the other prong.[9] When reviewing a claim of ineffective assistance of

counsel, this Court will not contest a trial court's finding of effective assistance of

counsel unless it was clearly erroneous.[10] This claim was presented to the trial

court within Granger's motion for new trial, and it was denied. Bearing these

principles in mind, we find no merit to Granger's claim.

Pretermitting whether the nurse's testimony constituted an improper

bolstering of T.G.'s credibility, it was hardly beneficial to the State or harmful to

Granger, as he was acquitted by the jury of rape, aggravated child molestation, and

sodomy. Thus, the jury obviously accepted Granger's contention that he had not

had forced sexual intercourse with T.G., that he had not performed oral sex upon

her, and that he had not physically injured her (in the process of performing

sodomy upon her), thus concluding that T.G. was not credible as to the allegations

---

[8] (Citations omitted.) *Battles v. State*, 290 Ga 226, 229 (2) (719 SE2d 423) (2011).

[9] *Id*.

[10] *Mealor v. State*, 266 Ga. App. 274, 276 (596 SE2d 632) (2004).

6

supporting these charges. While Granger was convicted of both statutory rape and child molestation, independent evidence other than T.G.'s testimony provided support for these charges, namely Granger's own testimony that he allowed her to masturbate him, the physical evidence that T.G.'s vagina was torn and bleeding, and the presence of his DNA on swabs which collected bodily fluid from T.G.'s vaginal area. Support can also be found in the circumstantial evidence of Granger's comments captured on the video recording, which is discussed in Division 3, infra.[11]

Accordingly, the trial court's conclusion that trial counsel was not ineffective for failing to object to the nurse's testimony or to move for a mistrial therefor, which was implicit in the trial court's denial of the Motion for New Trial, is not clearly erroneous.[12]

2. Granger claims that a comment made by the prosecutor during closing argument about the defense attorney's tactics was prejudicial and that his counsel

---

[11] See *Mealor*, supra at 278-279 (c) (despite improper bolstering, no ineffective assistance of counsel due to other evidence of guilt).

[12] *Johnson v. State*, 301 Ga. App. 423, 424-426 (687 SE2d 663) (2009).

was ineffective in failing to object thereto, such that he is entitled to a new trial. We disagree.

During closing, the prosecutor pointed out that defense counsel had taken inconsistent positions during the trial, by asserting in the trial that he was not attacking T.G.'s credibility, despite clearly doing so within the defendant's closing argument.[13] On appeal, Granger claims the prosecutor's comments were improper, as they were a reference to his counsel's successful motion, made outside the presence of the jury, where he obtained a ruling to keep out of the trial T.G.'s prior consistent statements to police officers as to what happened that night, based upon the claim that Granger's counsel had not attacked her credibility. Granger claims the prosecutor's argument during closing constituted a personal attack upon his counsel, which was intended to cause the jury to question his lawyer's integrity and credibility, which would thus impair the jury's view of Granger's own credibility. Granger also claims that the improper argument may have affected the jury's perception of T.G.'s credibility.

---

[13] Closing arguments were not taken down, and there is no transcript to review thereof. Yet, the trial court's order denying the Motion for New Trial acknowledges that such a statement was made.

8

First, it should be noted that the absence of a transcript of the closing argument makes it difficult to evaluate this comment made during closing, as the exact language used and the context in which the statement was made is not firmly established.[14] Nonetheless, it does not appear that the prosecutor was clearly in error in making this argument. This is so because during the direct examination of T.G.'s mother, Granger's trial counsel objected to her testifying as to what T.G. told her in a phone call the evening of this incident, on the grounds that such testimony would amount to improper "bolstering of a witness whose credibility has not been attacked." This objection was made in the jury's presence. Thus, the prosecutor's closing argument regarding inconsistent positions being taken during the trial regarding T.G.'s credibility seems to have been fair. This conclusion is especially appropriate given the "wide leeway given to argue all reasonable inferences that may be drawn from the evidence during closing argument," and that permissible argument may properly include that which illustrates inconsistencies "within the defense as a whole . . .."[15]

---

[14] Absent both a transcript and stipulation as to what occurred, this Court need not review this enumeration. See *Lyle v. State*, 131 Ga. App. 8, 10 (5) (205 SE2d 126) (1974).

[15] *Appling v. State*, 281 Ga. 590, 592-593 (5) (642 SE2d 37) (2007).

In denying the motion for a new trial on this ground, the trial court concluded that this comment was directed at Granger's defense counsel, not Granger himself, and that it was not harmful in any event due to the overwhelming weight of the evidence. Any claim that it harmed Granger's credibility, or his case, is belied by that fact that he was acquitted on three serious charges where his testimony and that of T.G.'s differed as to what transpired.[16] As is typical, the trial court instructed the jury that what the attorneys say is not evidence and that it was the jury's responsibility to determine the case based on the evidence presented in court.[17] Under these circumstances, we cannot say that Granger's counsel was ineffective for failing to object to these comments, that such an objection was warranted, or that Granger was harmed by the comments in the first place.

3. Granger claims that the trial court erroneously admitted a video of Granger's phone conversation while in the police interview room. We disagree.

---

[16] *Mojica v. State*, 210 Ga. App. 826, 826 (1) (437 SE2d 806) (1993) (A party seeking a reversal must show not only error, but injury arising from the error alleged).

[17] See *Long v. State*, 287 Ga. 886, 891 (4) (700 SE2d 399) (2010).

Admissibility of evidence is a matter which rests largely within the discretion of the trial court. Any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. Georgia law favors the admission of any relevant evidence, no matter how slight its probative value, and even evidence of questionable or doubtful relevancy or competency should be admitted and its weight left to the jurors.[18]

The contested statement, "[f]or like five minutes nigger . . . and then I stopped," is arguably a reference by Granger to having had sex with T.G., particularly when you consider that he was in the police station for an interview based upon allegations of that very fact. It was, thus, highly relevant and probative. Although the term Granger used in referring to his listener was distasteful, it was not directed at the victim. It is hard to see how under these circumstances it could summons any prejudice that would inure to Granger's detriment. Indeed, he was acquitted of many serious charges, and other evidence of his guilt was overwhelming. At the very least, its probative value outweighed any prejudice to Granger, and its admission as evidence in his case was proper.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[18] (Punctuation and footnotes omitted). *Ward v. State*, 274 Ga. App. 511, 513 (2) (618 SE2d 154) (2005).